United States Bankruptcy Court

District of Massachusetts

|  |  |
|---|---|
| In re<br><br>ROBERT L. HADSELL and<br>DEBORAH J. HADSELL,<br><br>         Debtors | Chapter 13<br>Case No. 04-40953 |

## MEMORANDUM OF DECISION

Before the Court is a "Motion of Debtor to Avoid Lien with Berter M. Moro of Washington, MA" (the "Motion to Avoid Lien") and an "Objection of Berter M. Moro to Confirmation of Debtors' Amended Plan" (the "Objection to Confirmation"), filed in the Chapter 13 bankruptcy case of Robert L. and Deborah J. Hadsell (individually, "Robert" and "Deborah"; collectively the "Debtors").

I.   FACTS

Notwithstanding the convolution of the underlying facts, they are undisputed and largely drawn from the parties' Stipulation, dated March 25, 2005.

Berter B. and Lola H. Moro (individually "Berter" and "Lola", collectively the "Senior Moros") purchased a family home at 218 North Plain Road in Great Barrington, Massachusetts in 1950 (the "Residence"). In 1989, Berter formed a trust entitled the

"Berter B. Moro and Lola H. Moro Irrevocable Trust of July 28, 1989" (the "Moro Trust").[1] One of the Senior Moros' children, Berter M. Moro ("Michael"), was designated as the trustee. The Moro Trust provided that upon Berter's death, if Lola did not survive him, the Moro Trust property would be distributed amongst all of Berter's issue.

Berter subsequently had a change of heart. In September of 1993, he attempted to amend the Moro Trust so that if he was not survived by Lola, the Moro Trust property would be distributed solely to Michael, free of the Moro Trust. One year later, in 1994, the Senior Moros conveyed the Residence to the Debtors for the sale price of $125,000.00. In return, the Debtors executed a promissory note in the amount of $125,000.00 made payable to the Senior Moros (the "Moro Note") and secured by a mortgage on the Residence (the "Moro Mortgage"). Both Berter and Lola passed away within a year of the sale; Lola in July of 1994, Berter in December of 1994. Before his death, Berter orally instructed the Debtors that, upon his death, they were to make the mortgage payments to Michael. And, pursuant to his will, Berter bequeathed his remaining estate to Michael as trustee to hold and/or administer pursuant to the Moro Trust. Upon Berter's death, the Debtors began making their payments on the Moro Note to Michael. At that time, the Moro Note had a principal balance of $123,529.00.

The Senior Moros were survived by three children, Michael, Betsy Salvato ("Betsy") and Lola Ann Gerhard ("Lola Ann"). Not long after the death of their parents, disputes erupted amongst the Moro children. In 1996, Betsy filed suit against Michael in the Massachusetts Berkshire County Probate and Family Court (the "Probate Court"), claiming

---

[1]But for the activities and assets described below, no further information has been provided relative to the Moro Trust.

2

that Berter's estate, including the proceeds of the Moro Note from the Debtors, should be divided equally amongst Michael, Betsy and Lola Ann because Berter's 1993 attempt to amend the Moro Trust was invalid. Betsy sought an order of trustee process to have the Debtors hold any payments due on the Moro Note as security for her claim against Michael. That motion was granted in the amount of $42,000.00. The Debtors were properly served with a trustee process summons and, *pro se*, filed an answer in the Probate Court case. That answer was essentially a request for instructions. That request was never answered.[2]

Despite the pendency of the Probate Court case, however, the Debtors subsequently made arrangements with Michael to discharge the Moro Mortgage. Employing funds obtained from a refinancing, the Debtors drew a check in the amount of $50,000.00 made payable to the now deceased Berter and Lola and delivered the check to Michael, together with an unsecured promissory note from Deborah in the amount of $35,000.00, made payable to Michael (the "Deborah Note").[3] In turn, Michael provided the Debtors with a discharge of the Moro Mortgage, notwithstanding that only $85,000.00 had been "paid" on an indebtedness that then stood at $117,000.00. The Debtors recorded that discharge and granted a new mortgage to United Companies Lending Corporation in the amount of $91,700.00. They subsequently granted a second mortgage for a home equity line of credit to Key Federal Savings Bank (August, 1997) and a third mortgage to Credit Union of the Berkshires (January, 2002).

---

[2] There is no evidence that the request was ever brought to the attention of a Probate Court judge or that it was ever served on either of the real parties to the Probate Court case.

[3] The record does not reflect why Michael did not require Robert to sign as co-maker.

3

In 1999, Betsy prevailed against Michael in the Probate Court case. The purported amendment by Berter of the Moro Trust was declared invalid and 1/3 of Berter's estate ordered distributed to Betsy. Yet Michael refused to turn over the proceeds of the Deborah Note, claiming that Berter had, independently of the purported amendment of the Moro Trust, assigned the Moro Note and Moro Mortgage to him through another document, an assignment (the "Berter Assignment"), dated in 1994 but not recorded until 1997. A contempt trial (Betsy v. Michael) followed in the Probate Court. The outcome was the same.

Not long thereafter, the Debtors fell behind on their payments on the Deborah Note. Michael filed suit against Deborah in the Berkshire County Superior Court and recovered judgment. The judgment was recorded in the Southern Berkshire Registry of Deeds. Execution issued in the amount of $37,411.00 and was also recorded in said deeds on September 2, 2003, creating a lien on the Residence under Massachusetts law (the "Michael Lien"). On September 26, 2003, Betsy's attorney recorded an affidavit, under M.G.L. ch. 183, Section 5(b), giving notice that the purported assignment of the Moro Mortgage and, accordingly, the purported discharge thereof had been declared invalid by the Probate Court.[4]

On February 27, 2004, the Debtors filed a Chapter 13 petition, bringing the foregoing dispute to these shores. But the original schedules did not list a debt to Michael

---

[4]In this, counsel for Betsy went too far; while the Probate Court order expressly invalidated the Berter Assignment, it did not expressly invalidate the discharge of the Moro Mortgage.

4

or Betsy or any other debt linked to the Moro Mortgage or Deborah Note.[5] Likewise, the first Chapter 13 plan filed by the Debtors did not reflect or provide for such debt. In June of 2004, the Debtors amended their Schedule F and Chapter 13 Plan to list Michael as an unsecured creditor pursuant to the Deborah Note. Deborah simultaneously filed her Motion to Avoid Lien. Michael opposed that motion and filed a proof of claim for the debt arising from the Deborah Note in the amount of $37,411.50.[6] Michael also objected to the plan. After a string of continuance requests by the parties, the Motion to Avoid Lien and Objection to Confirmation were finally heard by the Court and taken under advisement.

While the encumbrances against the Residence have been numerous - six, if one has been counting - the issues before this Court turn chiefly on the current status of the Moro Mortgage.

II.    POSITIONS OF THE PARTIES

A.    *Debtors' Position*

The Debtors assert that the Moro Mortgage was both paid and discharged. In support of this assertion, the Debtors pose numerous arguments: (1) at the time that Michael issued the discharge he appeared authorized to do so; (2) the $50,000 payment made in September of 1996, coupled with the Deborah Note, should be considered a settlement - which Michael had the authority to accept; (3) the Debtors paid, in good faith,

---

[5]The Debtors' Schedule D reflected only two mortgages against the Residence: EMC Mortgage and Credit Union of the Berkshires.

[6]The Debtors objected to Michael's proof of claim on the grounds of untimeliness and that Michael lacked standing in his individual capacity. No response having been received from Michael, the Court sustained the objection on September 21, 2004.

5

value for the discharge; (4) Michael had a fiduciary responsibility to accept funds on behalf of Betsy and Lola Ann; (5) Michael is estopped by the six and one half years that elapsed between the discharge and the recordation of the Probate Court's findings - thus depriving the Debtors and subsequent mortgagees of notice of a title issue; and (6) Michael should not be able to benefit from his actions due to his "unclean hands."

The Debtors further maintain that they made their best efforts to obey the Probate Court. They say they received the trustee process summons and answered it by asking the Probate Court for instructions, but received no response. In fact, they say that they refinanced the Moro Mortgage in order to comply with the trustee process, and that the funds should have been applied to their obligations thereunder. Based on that payment, they felt that the discharge by Michael was appropriate at that time. The Debtors further contend that the United Companies Lending Corporation, Key Federal Savings Bank and Credit Union of the Berkshires mortgages were all perfectly appropriate. The Debtors had paid an amount to satisfy the trustee process and were thereafter free to exercise full dominion over the Residence. They say that they had no idea that there was a potential problem with the discharge until the Probate Court opinion was put on record in 2003. The Debtors remind this Court, however, that the Probate Court opinion dealt with the assignment - not with the discharge. Therefore, the Debtors maintain that the discharge did not fail; rather, they say, the Probate Court ruling made Michael responsible for turning over to his siblings the proceeds he had already received.

Finally, the Debtors seek to avoid Michael's lien pursuant to 11 U.S.C. § 522(f). They argue that the Michael Lien impairs Deborah's exempt equity in the Residence.[7]

B.  *Michael's Position*

Michael now maintains that the Moro Mortgage was never paid nor discharged. He argues that because the Berter Assignment was declared invalid, Michael's discharge of the mortgage was also invalid. He says that, therefore, the remaining principal on the Moro Mortgage is secured debt. And, because the Chapter 13 plan does not provide for a secured claim for Michael as a beneficiary of the Moro Mortgage, he contends that it cannot be confirmed pursuant to 11 U.S.C. §§ 1322 & 1325. Worse, Michael says, is that the Debtors' plan was not filed in good faith as required by 11 U.S.C. § 1325. He maintains that the Debtors failed to list a debt to either Michael or Betsy, and that when the Debtors amended their schedules and plan, they misclassified the debt as unsecured. Based on these alleged misdeeds, Michael contends that the Debtors have engaged in dishonesty which amounts to bad faith.

In response to the Debtors' motion to avoid the lien resulting from the Deborah Note, Michael argues that, pursuant to 11 U.S.C. § 522(f)(2)(A), motions to avoid liens are required to include in their calculations mortgages against the subject property. Because

---

[7]The Debtors' Motion to Avoid Lien filed on June 21, 2004 asserted that there was no non-exempt equity in the property and, thus, the lien was avoidable in its entirety. On August 3, 2004, the Debtors amended the Motion to Avoid Lien; now asking to avoid the lien to the extent of $34,739.00, but conceding that there was $2,672.50 of non-exempt equity which was not subject to lien avoidance.

7

the Debtors did not include the Moro Mortgage in their § 522(f) calculation, Michael urges this Court to deny the Motion to Avoid Lien.

III.  DISCUSSION

   A.   *The Objection to Plan*

Michael objects to the Debtors' plan on two grounds: first, that the plan fails to provide for a secured debt (the Moro Mortgage); and second, that the plan was not filed in good faith.

Michael claims that the Moro Mortgage is still valid, and thus must be treated in the Debtors' plan, because the discharge he provided the Debtors is invalid. Michael asserts that the discharge automatically became invalid at the time the assignment was declared invalid by the Probate Court - but he provides no authority at all to support this proposition. An examination of the Probate Court order confirms the Debtors' representation that the Probate Court did not address the discharge of the Moro Mortgage. Furthermore, Michael's continuing actions both before and after the Contempt Judgment belie his argument that the discharge was invalidated.

One of two things is true: either Michael had the authority to grant the discharge of the Moro Mortgage or he did not. If he had the authority to grant that discharge, then he also had the authority to accept the Deborah Note as consideration for the discharge of the Moro Mortgage (albeit that he will or has had to share with his siblings). In that event, his suit against Deborah on the Deborah Note was appropriate and his execution lien valid. That judicial lien would, however, be subject to § 522(f), and must be reduced to the sum

8

of $2,672.50. The reduced sum would then have to be taken into account and treated as a secured claim of Michael, as trustee of the Moro Trust, in the Debtor's Chapter 13 plan.

Alternatively, if Michael did not have the authority to grant the discharge of the Moro Mortgage, he is surely estopped from complaining now. It is on account of his allegedly unauthorized actions - granting a discharge and receiving consideration in his individual capacity - that the Debtors and their current mortgagees would find themselves in the predicament which he would have this Court declare: that is, that the Debtors, as unwilling victims of the Moro family dispute, must somehow deal with the Moro Mortgage as well as with two other presumably innocent and furious mortgagees, each with a potentially undersecured claim.

As between these two alternatives, the former is far more justifiable and equitable. Michael elected to pursue the debt arising from the Deborah Note - which was received in partial consideration for the discharge of the Moro Mortgage - *after* the Probate Court order invalidating the Berter Assignment. He received a judgment and execution for nonpayment of the Deborah Note from the state court, and filed a proof of claim before this Court for sums due on the Deborah Note. He chose his course and is judicially estopped from changing his strategy or theory now.

Michael's argument that the Plan was not filed in good faith also fails to persuade. 11 U.S.C. § 1325(a)(3) requires that a Chapter 13 plan be proposed in good faith. "Good faith" has been held to mean simple honesty of purpose. In re Keach, 243 B.R. 851

9

(B.A.P. 1st Cir. 2000).[8]  Determinations of good faith are made on a case-by-case basis. See, e.g., In re Stanley, 296 B.R. 402 (Bankr. E.D. Va. 2002). Where there have been inaccuracies in a debtor's schedules or Chapter 13 plan, the Court considers: (1) whether the debtor intended to mislead; and (2) whether the plan, as a whole, treats the debtor's creditors with fundamental fairness. In re Smith, 286 F.3d 461 (7th Cir. 2002).

Michael says that the Debtors' omission of the Moro Mortgage in their schedules and plan constitutes bad faith. But this Court has ruled above that Michael has failed to prove that a claim against the Debtors arising from the Moro Mortgage exists. With respect to the Debtors' original omission of the Deborah Note and the Michael Lien in their schedules and plan, they concede that their omission of the Michael Lien from their original schedules and Chapter 13 plan was improper. And, in fact, they have previously amended both their schedules and plan to reflect Michael's lien. Of course, the amendment placed the Michael Lien in Schedule F (unsecured claims), rather than Schedule D (secured claims). While not to be encouraged, this Court finds this error to be less than egregious

---

[8]The Keach decision has been criticized by some courts and commentators who have suggested that its holding limits a court's consideration of a debtor's postpetition good faith only to the debtor's postpetition behavior. That criticism is misplaced and the Keach holding apparently misunderstood. A court's consideration of postpetition honesty of purpose is frequently informed by a debtor's prepetition conduct. In re Keach, 243 B.R. at 868-71. Keach stands for a more subtle proposition: that a court may not alter rights that a debtor has been granted by Congress (e.g., the right to make a new non-serial Chapter 13 filing; the right to pay a dividend unaffected by the nature of a debt which Congress has expressly declared dischargeable; and the right to then discharge that debt) by determining that those rights are unfair or inequitable based on the court's distaste for Congress' choices. In re Keach, 243 B.R. 851.

under the circumstances. Further, the error has had no adverse impact on Michael or the bankruptcy case as a whole. That Michael currently holds a lien pursuant to the Deborah Note is uncontested, and the Debtors' own motion to avoid that lien, currently before the Court, concedes that not all of the Michael Lien can be avoided.

The Debtors' original omission, and subsequent misclassification, of the Deborah Note and the Michael Lien does not indicate an intent to mislead, nor does it demonstrate a lack of fundamental fairness. This Court finds that the Debtors' Chapter 13 plan was filed in good faith.

### B.    *The Motion to Avoid Lien*

Michael objects to the Motion to Avoid Lien on the basis that the Debtors failed to include the Original Mortgage in their 11 U.S.C. § 522(f) calculation. This Court having found that, for the purposes of this bankruptcy case, the Moro Mortgage was previously discharged, and no further objections having been raised, the Motion to Avoid Lien (as amended on August 3, 2004) must be granted.

### IV.    CONCLUSION

For all the foregoing reasons, the Motion to Avoid Lien, as amended on August 3, 2004, is GRANTED. The Objection to Confirmation is sustained, but only insofar as a

11

secured claim by Michael, as trustee of the Moro Trust, in the amount of $2,672.50 must be treated in the Debtors' Chapter 13 plan pursuant to 11 U.S.C. § 1325.

Separate orders in conformity with this Memorandum of Decision shall enter herewith.

DATED: July 15, 2005                    By the Court,

                                         *[signature]*
                                         Henry J. Boroff
                                         United States Bankruptcy Judge